SYSTEM TECHNOLOGY ASSOCIATES, INC. vs. COMMISSIONER
OF REVENUE.

Suffolk. September 13, 1984. — December 17, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Administrative Law*, Regulations. *Commissioner of Revenue. Taxation,*
Appraisers.

Where the Commissioner of Revenue issued a list of firms and individuals
qualified to appraise property for tax purposes pursuant to G. L. c. 58,
§ 1A, without first adopting any regulation establishing standards for
evaluating qualifications and performance of assessors, as contemplated
by G. L. c. 58, § 1, the list was held invalid. [544-545]

APPEAL from a decision of the Appellate Tax Board.

*Thomas A. Barnico,* Assistant Attorney General, for the
Commissioner of Revenue.

*Robert F. Sylvia* for the plaintiff.

O'CONNOR, J. General Laws c. 58, § 1A, inserted by St.
1979, c. 797, § 3, provides that the Commissioner of Revenue
(Commissioner) "shall issue, and may from time to time revise,
a list of private firms or individuals qualified to perform ap-
praisals or reappraisals of property for tax purposes in the
commonwealth . . . ." System Technology Associates, Inc.
(STA), applied to be placed on the initial list. The Commis-
sioner issued the initial list on January 5, 1982. STA was not
on it. STA appealed to the Appellate Tax Board (board) pur-
suant to G. L. c. 58, § 1A. The board ordered the Commissioner
to put STA on the list. The Commissioner appeals here pursuant
to G. L. c. 58A, § 13. We hold that the list is invalid, and
therefore we vacate the board's decision.

In 1979, the Legislature enacted "An Act making changes
in the law providing for the taxation of real property by usage
classification." St. 1979, c. 797. The statute greatly expanded

the Commissioner's role in the valuation, classification, and assessment of real property. General Laws c. 58, § 1, as appearing in St. 1979, c. 797, § 3, requires the Commissioner to "make, and from time to time revise, such reasonable rules, regulations and guidelines, as may be necessary to establish minimum standards of assessment performance," including standards relating to "the types of qualifications of assessing personnel." General Laws c. 58, § 1A, sets forth numerous specific duties of the Commissioner. One of those duties is to issue "a list of private firms or individuals qualified to perform appraisals or reappraisals of property for tax purposes in the commonwealth." The paragraph which sets forth this duty provides in full: "He shall issue, and may from time to time revise, a list of private firms or individuals qualified to perform appraisals or reappraisals of property for tax purposes in the commonwealth and shall make such list available to assessors. In any case where a city or town proposes to contract with any such private firm or individual for such appraisal or reappraisal services, such contract shall be with a firm or individual determined by the commissioner to be qualified to perform such services and said contract shall be approved as to form and content by the commissioner. Upon completion, he shall certify that valuations established under such appraisal or reappraisal of property for tax purposes by any such firm in the commonwealth comply with guidelines established under section one. Firms or individuals aggrieved by a decision of the commissioner that they are not qualified to perform appraisals or reappraisals of property for tax purposes in the commonwealth may appeal such decision to the appellate tax board." G. L. c. 58, § 1A.

Pursuant to c. 58, § 1, the Commissioner promulgated Regulation 58.04 – "Revaluation Contractors" – which became effective on June 18, 1981. 830 Code Mass. Regs. 58.04 (1981). Paragraph (2) of Regulation 58.04 provides: "(2) *Approved List.* The Commissioner shall issue, initially before December 31, 1981, and annually thereafter on or before January 14, a list of contractors who are qualified to perform revaluations. . . .

"To be considered for inclusion on the initial list, a contractor should submit the following information to the Commissioner on or before August 15, 1981. To be considered for addition to the approved list or for retention on the revised approved list, each contractor should submit the following information to the Commissioner, annually, on or before October 1: (a) a list of the names, responsibilities, and training of all officers, partners, and full-time professional employees of the contractor who are directly involved in revaluations; (b) a list of all revaluations, wherever conducted, either in progress or completed within the past five years; (c) a summary of any litigation during the past five years in which the contractor's performance under a revaluation contract was at issue; and, (d) a statement that the contractor is willing and able to post a surety bond or collateral sufficient to guarantee performance of its contracts.

"If requested by the Commissioner, the contractor must make sufficient financial information available to indicate his financial responsibility.

"The Commissioner shall not add a contractor to, or retain a contractor on, the approved list unless the contractor timely submits the required information; the contractor's past revaluations, if any, resulted in locally assessed values which were certified by the Commissioner as representing full and fair cash value; and, the contractor's resources appear adequate to meet its obligations.

"The Commissioner shall notify each contractor whether it has been added to, or retained on, the approved list. A contractor may appeal a refusal by the Commissioner to add the contractor to, or to retain the contractor on, the approved list to the Appellate Tax Board in accordance with General Laws Chapter 58, Section 1A.

"Only contractors on the current approved list may bid on a revaluation contract. The Commissioner will not approve revaluation contracts with contractors who have not been determined to be qualified."

By letter dated August 11, 1981, STA submitted the information required by Regulation 58.04. The letter stated that STA had completed or was working on revaluations for twenty-

seven towns and cities, four of which the State had certified. It summarized the backgrounds of twenty-four of STA's "key" employees, and it stated: "STA has been involved in no litigation in which our performance under a revaluation contract was at issue"; and "STA is willing and able to post surety bonds or collateral sufficient to guarantee performance of our contracts."

As we have said, the Commissioner did not place STA on the initial list. A letter dated January 4, 1982, from the Commissioner's office to the president of STA offered only this explanation: "Upon consideration of the qualifications required by [Regulation 58.04] the Commissioner has determined that System Technology, Inc. [sic] shall not be included on the initial list."

STA appealed the Commissioner's decision to the Appellate Tax Board pursuant to G. L. c. 58, § 1A. The board took evidence and made these findings and observations: "In September of 1981, the Commissioner selected STA as the lowest qualified bidder to perform the revaluation of the Town of Millville. The two other bidders were subsequently named to the initial list of qualified revaluation firms. Additionally, the Commissioner approved in November 1981 the selection of STA by the City of Somerville to perform its revaluation. Additionally, values found by STA in the following cities and towns had been certified by the Commissioner: Stoneham, Westford, Longmeadow, Marlborough, Needham, Northborough, Tolland and Pembroke.

"By letter, dated January 4, 1982, but not received by STA until January 19, 1982, it was informed that it would not be included on the initial list of qualified revaluation contractors. No reason for the decision was stated in this letter. Subsequently, STA discovered that it was not included on the list of qualified firms because of alleged unsatisfactory performance under certain of its existing contracts. Satisfactory performance was not set forth as a condition in Department of Revenue's regulation 830 CMR s. 58.04. Additionally, there were no objective standards set forth to determine what constitutes satisfactory performance by a revaluation contractor in

any regulation of the Department. STA had fully complied with all of the requirements as stated in the regulation.

"The Commissioner's decision was influenced by numerous phone calls she received from people outside the Department of Revenue including 'Representatives, people in the Executive Branch of Government.' The calls were concerned with some of the revaluations that were ongoing at that time by STA. The board finds that a decision based in whole or in part by such influences is totally devoid of administrative due process.

"Twenty-seven appraisal firms submitted an application for inclusion on the list of qualified revaluation contractors. Nine applicants, including STA, were excluded from the list. However, STA was the only applicant excluded on the grounds of unsatisfactory contract performance. This exclusion of STA in December 1981 coming on the heels of a contract award by the Commissioner to STA in September 1981 and the approval of the selection of STA by Somerville in November 1981 is inexplicable.

"The Commissioner failed to follow the regulation as promulgated and attempted to add an additional condition not contained therein – namely, a performance test. So far as it is a question of fact, the board finds the action of the Commissioner in failing to include STA on its initial list of qualified revaluation contractors to be arbitrary and capricious and not in accordance with the applicable statute and regulation. In addition, the failure of the Commissioner to notify STA that she proposed to exclude STA from the list of qualified revaluation contractors based on unsatisfactory contract performance and her failure to afford STA an opportunity to be heard on this matter constitutes a total lack of administrative due process.

"Based on all of the evidence, testimony, exhibits, the foregoing general and subsidiary findings and our interpretation of the applicable statute and regulation, the board found for the appellant and ruled that it should have been included on the initial list of qualified revaluation contractors since it had complied with all the requirements of 830 CMR s. 58.04."

The board ruled that "[t]he statute and regulation are clear on their face. Neither contains any requirement of satisfactory

work performance or any objective standard for determining satisfactory performance. The Commissioner's action adding such a requirement to the regulation and her actions as a result are arbitrary and capricious and must be overturned as a matter of law." The board ordered that STA "be placed on the approved list of contractors who are qualified to perform revaluations."[1]

General Laws c. 58, § 1, requires the Commissioner to "make, and from time to time revise, such reasonable rules, regulations and guidelines, as may be necessary to establish minimum standards of assessment performance," including standards relating to "the types of qualifications of assessing personnel." The statute grants the Commissioner the discretion to determine what rules, regulations, and guidelines are necessary to establish minimum standards having to do with the types of qualifications of assessing personnel, but the statute mandates that the Commissioner establish some standards.

General Laws c. 58, § 1A, directs the Commissioner to establish, and from time to time to update, a list of firms and individuals qualified to appraise or reappraise property for tax purposes. Reading the two sections of the statute harmoniously, with a view to effectuating the legislative purpose, we conclude that the Legislature intended the Commissioner to include on her list applicants who meet the established standards, and to exclude those who do not. The Legislature would not have instructed the Commissioner to establish standards if it intended to allow the Commissioner to compile the list in her unfettered discretion.

The Commissioner promulgated Regulation 58.04, paragraph 2 of which provides that revaluation contractors must submit certain information to the Commissioner in order to be considered for inclusion on the list. If qualifying standards had been established, the information required by paragraph 2 of Regulation 58.04 would have helped the Commissioner to determine whether STA and other applicants measured up to

[1] At the time these events took place the Commissioner was L. Joyce Hampers. Since then Ira Jackson has become Commissioner. For consistency's sake, when referring to the Commissioner we shall use feminine pronouns.

those standards. But, the standards themselves were not established by that regulation, and the Commissioner did not promulgate any other rule, regulation, or guideline establishing such standards. Since the Commissioner had not established standards as required by G. L. c. 58, § 1, when she issued the initial list, the list was not lawfully issued. Therefore, it is void. See *Polaroid Corp.* v. *Commissioner of Revenue, ante* 490, 496 (1984) ("Decisions made without required regulations are invalid").

Our conclusion that the list is void disposes of this appeal. Therefore, we do not address the numerous other issues argued by the parties except to make two observations: (1) past performance is relevant to a determination of the qualifications of a revaluation contractor, and (2) on appeal to the board pursuant to G. L. c. 58, § 1A, the board's function is to conduct a de novo review.

Finally, we note that, because the list published by the Commissioner is void, it cannot operate to preclude cities and towns from contracting with revaluation contractors omitted from it. The list has no legal effect, and therefore we vacate the board's order placing STA on the list.

*So ordered.*